IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| PATRICK WARREN PROFFITT, | ) | |
| Individually, and on behalf of all others | ) | |
| similarly situated, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-146 |
| | ) | |
| ABBOTT LABORATORIES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of "Plaintiff's Motion for
Remand of Proceedings to State Court Based Upon Lack of Subject Matter Jurisdiction"
[doc. 6][1] and defendant "Abbott's Motion to Transfer Venue Pursuant to 28 U.S.C. §
1404(a), or, in the Alternative, Under the First-to-File Rule" [doc. 16].  Defendant has filed
a response in opposition to the motion to remand [doc. 14].  Plaintiff has not responded to
defendant's motion to transfer venue.

Plaintiff filed eleven lawsuits that are identical except for the time periods that
they allege to cover.  The court's opinion herein will address and resolve the issues for all
eleven cases, and, therefore, this opinion will be entered in each of the eleven civil actions.

---

[1] Plaintiff's motion lists all eleven cases in the one caption.

Briefly, plaintiff alleges that defendant and two alleged co-conspirators not sued herein sold the brand named drug TriCor in Tennessee and the United States by acting together to maintain a monopoly in the market of fenofibrate drugs.  They allegedly did this by excluding generic competition through improper and anti-competitive means.  Defendant and its alleged co-conspirators purportedly obtained multiple patents, filed patent litigation and reformulated the TriCor product all as part of a scheme to prevent the entry of generic fenofibrate drugs into Tennessee.  The allegations begin in 1998, but various years are referenced throughout the complaints.

Also pending against defendant in the United States District Court for the District of Delaware are multiple antitrust actions (the "Delaware Actions") which share factual allegations with the eleven cases before this court.  One of those cases is a class action that includes individuals from Tennessee.  The judge assigned to those cases has already done considerable work, heard a number of motions, and is familiar with the antitrust prescription drug at issue here.

*Motion to Remand*

Defendant removed all eleven cases pursuant to the Class Action Fairness Act ("CAFA"), which amended 28 U.S.C. § 1332 and provides in relevant part that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action

in which -- any member of a class of plaintiffs is a citizen of a State different from any

defendant . . . ." 28 U.S.C. § 1332(d)(2)(A).  The proposed class must include at least one

hundred members.  28 U.S.C. § 1332(d)(5)(B).  "CAFA does not alter the fact that the

removing defendant has the burden of demonstrating, by a preponderance of the evidence,

that the amount in controversy requirement has been met." *Smith v. Nationwide Prop. & Cas.*

*Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007) (quotation marks and citations omitted).

> Congress enacted CAFA to address inequitable
> state court treatment of class actions and to put an
> end to certain abusive practices by plaintiffs' class
> counsel. CAFA § 2, 119 Stat. at 5.  CAFA seeks
> to address these inequities and abusive practices
> by, among other things, broadening federal
> diversity jurisdiction over class actions with
> interstate implications.  CAFA § 2, 119 Stat. at 5;
> *see also Miedema* [v. *Maytag Corp.* 450
> F.3d1322,1329 (11th Cir. 2006)] ("[T]he text of
> CAFA plainly expands federal jurisdiction over
> class actions and facilitates their removal [.]").

*Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007).

Plaintiff has moved to remand all eleven cases based on a lack of subject matter

jurisdiction. Plaintiff argues *inter alia* that each complaint contains a disclaimer limiting all

damages recoverable to $4,999,000, and therefore the jurisdictional amount has not been met.

He further contends that as "master of his complaint" he is entitled to do so, and defendant

cannot aggregate the cases to reach the jurisdictional amount.  Plaintiff does not challenge

removal on any other basis nor does he contend that any of exceptions under the CAFA

apply.

> It is well established that the plaintiff is "master of [his] complaint" and can plead to avoid federal jurisdiction.   Accordingly, subject to a "good faith" requirement in pleading, a plaintiff may sue for less than the amount [he] may be entitled to if [he] wishes to avoid federal jurisdiction and remain in state court.

*Smith*, 505 F.3d. at 407 (quoting *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007)).   However, "[a] disclaimer in a complaint regarding the amount of recoverable damages does not preclude a defendant from removing the matter to federal court upon a demonstration that damages are 'more likely than not' to 'meet the amount in controversy requirement,' but it can be sufficient absent adequate proof from defendant that potential damages actually exceed the jurisdictional threshold." *Smith*, 505 F.3d at 407 (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (quoting *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000))).

The only difference among the eleven lawsuits filed by plaintiff is the time period each is alleged to cover.  The plaintiff and defendant are the same in each case, and it is clear to the court that the allegations cover one antitrust conspiracy concerning the same drug, TriCor.  For example, the time period alleged in the first complaint filed, No. 2:08-CV-140, is January 1, 1998 through December 31, 1998.  The second complaint, No. 2:08-CV-142, addresses the time period of January 1 through December 31, 1999.  The other nine complaints address the years 2000 through 2008.  However, each complaint contains allegations concerning the entire scope of the alleged conspiracy during various time periods

throughout the full decade.

It is apparent to the court that the time divisions are a deliberate attempt to circumvent the CAFA so that the plaintiff can place a damage disclaimer of $4,999,000 in each complaint.  The time divisions are completely arbitrary and have no justifiable basis other than as a means to create time frames small enough to allow the damages disclaimers as they are not warranted by the facts of the alleged conspiracy.  The time divisions could just as easily have been established at two years, three years or five years.  Other than the difficulty of making a damages disclaimer to avoid the CAFA, there appears no reason for selecting the one-year divisions and creating eleven lawsuits to litigate one conspiracy that involves one defendant and one drug.

This fact is supported by the Declaration of Margaret Guerin-Calvert, who specializes in antitrust economics and applied microeconomics and who is serving as an expert for defendant in the Delaware Actions.  In those actions she submitted an expert report that responded to the opinions of the plaintiffs' damages expert and also the opinions of the experts in the other cases consolidated with the Delaware Actions.  She summarizes her conclusions as follows:

> The Delaware Action purports to represent a class of Tennessee individuals (and others) who purchased Abbott's prescription drug TriCor® after April 2002.  If liability is established in the Delaware Action and if the jury also accepts the opinions of the plaintiffs' damages expert, then as set forth in his expert reports stating his opinions, (a) the "overcharge" damages of Tennessee

> individuals would be between $10,400,278 and
> $16,338,013 for the period April 2002 through
> November 2006 and (b) the "unjust enrichment"
> damages of Tennessee individuals would fall
> between $11,925,226 and $17,624,841 for the
> period April 2002 through November 2006.

This testimony demonstrates the amount of money that is potentially involved in this

litiguation and as a result of this one alleged conspiracy.

When Congress amended 28 U.S.C. § 1332, it intended to broaden federal

court jurisdiction.  In *Hart v. FedEx Ground Package System, Inc*., 457 F.3d 675 (7th Cir.

2006), the Seventh Circuit was addressing the issue of which party has the burden of

persuasion regarding the home-state or local-controversy exceptions to the CAFA.  The

Court held that the plaintiff has the burden, and in doing so relied in part on the legislative

history of the CAFA.  The Court stated:

> The Senate Judiciary Committee unambiguously
> signaled where it believed the burden should lie.
> The committee report said "[o]verall, new section
> 1332(d) is intended to expand substantially
> federal court jurisdiction over class actions.  Its
> provisions should be read broadly, with a strong
> preference that interstate class actions should be
> heard in a federal court if properly removed by
> any defendant." S. Rep. 14, 109th Cong. 1st Sess.
> 43 (2005), 2005 U.S.C.C.A.N. 3, 41.

*Id.* at 681.  The Seventh Circuit stated that its holding that the plaintiff has the burden of

persuasion on the exceptions is also consistent with the stated purposes of the CAFA.  The

Court noted:

Congress made the following findings when it enacted CAFA:

(4) Abuses in class actions undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity jurisdiction as intended by the framers of the United States Constitution, in that State and local courts are-

(A) keeping cases of national importance out of Federal court;

(B) sometimes acting in ways that demonstrate bias against out-of-State defendants; and

(C) making judgments that impose their view of the law on other States and bind the rights of the residents of those States.

Pub.L. 109-2, § 2, Feb. 18, 2005, 119 Stat. 4.

*Id*. at 681-82.

In *Shappell v. PPL Corp.*, No. 06-2078, 2007 WL 893910 (D.N.J. Mar. 21, 2007), defendant removed the case under the CAFA.  Plaintiffs moved to voluntarily dismiss the class action allegations and remand the remaining claims to state court.  The district court was concerned, as had been argued by the defendant, that the voluntary dismissal was an attempt by the plaintiffs to gerrymander smaller class sizes in state court that would be outside the reach of the CAFA.  The court expressed its concern that the defendant would be prejudiced by having to litigate multiple class action cases in state court without the ability to remove them.  The Court determined:

Additionally, the Congressional intent behind CAFA would be undermined by such strategic use of the rules. *See e.g.*, 28 U.S.C. § 1711(b)(2) (stating one of the purposes of CAFA is "[to] restore the intent of the framers of the United States Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction"). Therefore, the Court grants Plaintiffs' motion to voluntarily dismiss, on the condition that none of the Plaintiffs named within the complaint may file or enter a class action in any court in the United States on the basis of any theory of recovery stemming from the facts stated in the complaint before this Court.

*Id*. at *3.

Another case in which a district court dealt with a motion to remand a class action removed under the CAFA is *Brook v. UnitedHealth Group Inc*., No. 06 CV 12954(GBD), 2007 WL 2827808 (S.D.N.Y. Sept. 27, 2007). Approximately thirteen months prior to commencing this case, the plaintiffs' counsel had filed a similar class action in Connecticut State court that remained pending. A significant portion of the complaint in *Brook* was virtually identical to the complaint in the Connecticut case. The district court stated:

[T]he legislative history [of the CAFA] "also notes that one of the common abuses in class action practice is where the original class lawyers file "'copy cat' class actions (*i.e.*, duplicative class actions asserting similar claims on behalf of essentially the same people)" in different courts. S.Rep. No. 109-14 at 42, U.S.Code Cong. & Admin. News 3, 40 12, 19. "Multiple class action

> cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity." S.Rep. No. 109-14 at 42, U.S.Code Cong. & Admin. News 3, 40, 4.

*Id*. at \*4.  The Court further stated, "Plaintiffs cannot simply evade federal jurisdiction by defining the putative class on a state-by state basis, and then proceed to file virtually identical class action complaints in various state courts.  Such conduct is precisely what the CAFA legislation was intended to eradicate." *Id*.

In like fashion, the plaintiff herein with his eleven class action complaints cannot create duplicative class action litigation and arbitrarily "gerrymander" time frames in order to evade the purview of the CAFA. The cases discussed above demonstrate that when Congress enacted the CAFA, it intended to expand federal court jurisdiction over class actions and to address abuses that were occurring in class action litigation.  When addressing issues involving the CAFA, courts need to bear in mind and make decisions that are consistent with the Congressional intent and purpose of the CAFA.  For example, the district court in *Shappell*, concerned that the plaintiffs were trying to gerrymander class size, was willing to put restrictions on the voluntary dismissal it granted in order to prevent the plaintiffs from forming smaller class actions in state court that the defendants would be unable to remove under the CAFA.

In this case, the court sees the intent of the CAFA being undermined by the device of filing multiple lawsuits based on completely arbitrary time periods. The court finds

there is no justification for dividing one alleged drug conspiracy involving one defendant into eleven lawsuits under these circumstances other than to circumvent the CAFA and federal court jurisdiction.   The intent of Congress was clear that the new § 1332(d) would substantially broaden federal court jurisdiction over class actions.  Defendant has presented sufficient evidence in the Declaration of Margaret Guerin-Calvert to carry its burden that more likely than not the damages in these cases meet the jurisdictional threshold.  These cases cannot be considered as isolated lawsuits, each with an individual damage limit and jurisdictional threshold.  They involve one alleged conspiracy, one plaintiff, one defendant. Undoubtedly, at some point they would be consolidated for trial and treated as one lawsuit for the purposes of judicial economy.   The court further notes that plaintiff filed his motion for remand listing all eleven cases in a single caption.  These matters cannot be treated as eleven different lawsuits, because in the court's opinion, for the purposes of the CAFA this is one class action.   The defendant has made the necessary showing that the amount in controversy has been met, and therefore this court has jurisdiction.  Accordingly, plaintiff's motion to remand will be denied.

*Motion to Transfer Venue*

Defendant seeks to have all eleven cases transferred to the United States District Court for the District of Delaware.  As referenced above, plaintiff has not responded to the motion within the time allowed by this court's local rules.   "Failure to respond to a

motion may be deemed a waiver of any opposition to the relief sought." E.D.TN. LR 7.2.

The motion to transfer these cases to the District of Delaware is brought

pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in
> the interest of justice, a district court may transfer
> any civil action to any other district or division
> where it might have been brought.

In assessing whether a case should be transferred, the court considers several factors in its

analysis.  These factors include:

> (1) convenience of the parties; (2) convenience of
> the witnesses; (3) the interests of justice; and (4)
> whether the civil action might have been brought
> in the district to which the movant requests a
> transfer.

*Cent. States, S.E. & S.W. Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8

F. Supp. 2d 1008, 1010 (N.D. Ohio 1998)(citing *Roberts Metals, Inc. v. Fla. Props. Mktg.*

*Group, Inc.*, 138 F.R.D. 89, 91-92 (N.D. Ohio 1991)).

With regard to an analysis for a transfer under § 1404(a), the Sixth Circuit has

stated:

> A district court should consider the private
> interests of the parties, including their
> convenience and the convenience of potential
> witnesses, as well as other public-interest
> concerns, such as systemic integrity and fairness,
> which come under the rubric of "interests of
> justice."

*Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citation omitted).

Included in these public and private interests are "plaintiff's choice of forum, location of documents, convenience of witnesses, possibility of prejudice in either forum, and the practical problems associated with trying the case expeditiously and inexpensively." *U. S. v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) (citing *W. Am. Ins. Co. v. Potts*, No. 89-6091, 1990 WL 104034, at *2 (6th Cir. July 25, 1990)).

In addition, the interest of justice is an important factor that alone may require the transfer of an action to another district court. *Hooker v. Burson*, 960 F. Supp. 1283, 1291 (M.D. Tenn. 1996) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986)); *see also Donald v. Seamans,* 427 F. Supp. 32, 33 (E.D. Tenn. 1976) ("[w]here 'the interest of justice' is paramount, and where the comparative convenience of the transferee and transferor forums is not significant, transfer under §1404(a) is appropriate."). "Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir.1997) (internal quotation marks and citation omitted). When considering the interests of justice, the court weighs factors such as "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (9th Cir. 1989).

A district court has broad discretion in deciding whether to grant or deny a motion to transfer pursuant to § 1404(a). *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir.

1994).  In addition, the party seeking the transfer typically bears the burden of showing that

another forum is more convenient.  *Viron Int'l Corp. v. David Boland, Inc*., 237 F. Supp. 2d

812, 815 (W.D. Mich. 2002).  Therefore, defendant has the burden of demonstrating that the

District of Delaware is a more convenient forum than this one.

  Defendant argues *inter alia* that a transfer to the District of Delaware would

be in the interest of justice and would promote judicial economy.  The court agrees.  The

eleven lawsuits could have been brought originally in the District of Delaware because the

Delaware Actions involving the same defendant and the same drug are already pending there.

  With regard to the convenience of the parties and the witnesses, it is difficult

to decisively weigh those factors.  Obviously they weigh in favor of the defendant since it

has pending litigation in the District of Delaware.  As to the plaintiff, the case is in its very

early stages, so there is no sense of how many potential witnesses there might be or where

they might live.  However, the plaintiff did not respond to the motion, so he has not presented

any opposition to it or presented any argument concerning the applicable factors.  In any

event, the court believes that the interest of justice, especially the factor of related litigation,

is determinative and would outweigh the convenience of parties and witnesses in all eleven

cases.

  Defendant has demonstrated that the Delaware Actions are sufficiently related

to the eleven cases filed by plaintiff.  The pendency of this related litigation is "a significant

factor in considering the interest of justice factor."  *Jolly v. Purdue Pharma L.P.*, No. 05-CV-

1452H, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005) (citations omitted). "[L]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids [duplicative] litigation and inconsistent results." *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982).  The eleven cases are similar enough to the Delaware cases that they should be heard by the same court that is familiar with the issues in order to conserve judicial resources and to prevent inconsistent rulings as well.   Therefore, defendant's motion will be granted, and all eleven cases will be transferred to the District of Delaware.

An order consistent with this opinion will be entered.


ENTER:


_____ s/ Leon Jordan _____
United States District Judge


14